**Denny LEMONS, Appellant,**

v.

**George SHIPMAN et al., Appellees.**

**No. 47351.**

Court of Appeals of Oklahoma,
Division No. 2.

Sept. 9, 1975.

Released for Publication by Order of Court
of Appeals Oct. 2, 1975.

John W. Young, Jerry L. Abercrombie, Sapulpa, for appellant.

Austin O. Webb, Dist. Atty., Okmulgee County, Okmulgee, for appellees Sam Pyle, Willard Jacobs, Worth Pollard, and Board of County Commissioners of Okmulgee County.

BACON, Judge.

This appeal involves a personal injury suit that arose as a result of appellant's automobile being struck from behind by a

truck owned by Okmulgee County, Oklahoma. Appellant sued the Board of County Commissioners of Okmulgee County (Board) both as a body and individually, in addition to the driver of the truck who was an employee of the Board. The trial court overruled the demurrer of the truck driver (George Shipman) and sustained demurrers of the commissioners (appellees). Appellant is appealing from the latter rulings.

■ Appellant argues under two propositions. In his first proposition appellant argues that the petition stated a cause of action against appellees. Appellant's second proposition, stated simply, is that the "out-dated doctrine of governmental immunity should be abolished."

We will first allude to the question of abolishing the doctrine of governmental immunity. The doctrine of governmental immunity is based on the old maxim that the king can do no wrong. While some states have in recent years come to realize the king can and does sometimes do wrong, the Supreme Court of Oklahoma recently in *Henry v. Oklahoma Turnpike Auth.*, Okl., 478 P.2d 898 (1970) expressed an unwillingness to abolish the doctrine of governmental immunity. In *Henry*, the court court said:

> "The doctrine of governmental immunity has long been the law and public policy of this State. This doctrine has long been recognized and followed by this court. We see no compelling reason for us to disrupt the present policy of the State and overrule a long line of past decisions. *If the present policy is to be changed it should be done by the legislature,[1] as representatives of the people, and not by this court.*" (emphasis ours)

We therefore conclude that the trial court properly sustained the demurrer of the Board of County Commissioners as a body politic.

We now turn to review the sustention of the demurrers of the Board of County Commissioners as individuals.

■ County commissioners are normally not liable as individuals for negligence of employees, but they are individually responsible for their own acts under certain circumstances. The law in this regard is best set forth in the syllabi in *Hazlett v. Board of County Commissioners,* 168 Okl. 290, 32 P.2d 940 (1934) which read in part as follows:

> "3. County commissioners are not individually responsible for the negligence of those whom they are obliged to employ in the discharge of their duties in the execution of public works, such employees are not their servants, and the rule of respondeat superior does not apply so as to charge them with responsibility for the negligent acts of such employees. *Berg v. Willibey*, 138 Okl. 110, 280 P. 456.

> "4. Public officers are individually responsible for their own acts in the abuse or transgression of their authority, or for willful and wanton negligence in the choice of their employees or in the superintendence of such employees in the discharge of their allotted duties."

In *Hazlett,* a truck owned by Muskogee County and driven by an employee of the county commissioners ran over a curb and struck the plaintiff on the sidewalk injuring her in addition to scalding her with water emitted from the truck's radiator. The trial court sustained the demurrers of the individual commissioners as well as the demurrer of the Muskogee Board of County Commissioners. The Supreme Court affirmed the sustention of the demurrer by the Board of County Commissioners on the basis of governmental immunity, but re-

---

1. The Oklahoma Legislature, by the adoption of 47 O.S.1971 § 158.1, has to a limited extent removed the defense of governmental immunity traditionally recognized in this state. The new law permits suits against the state where a state-owned vehicle causes damages. However, this non-immunity to suit is specifically limited to the amount of insurance coverage on the vehicle.

versed as to the demurrers of the county commissioners as individuals. In *Hazlett,* the plaintiff had alleged the commissioners knew or could have known by the use of ordinary care that the truck had defective brakes, was old, dilapidated and the cooling system was defective. In addition to those allegations, plaintiff also alleged the commissioners knew about the careless and reckless manner of the driver and that they were negligent in placing such a driver in such defective truck.

Before we get to the petition in the present case, we deem it necessary to clarify the position of the parties. Appellant's position, of course, is that his petition states a cause of action in that appellees were negligent in their choice and continuing employment and supervision of their driver, and for the further reason they provided the driver with an unsafe truck. Appellees' position is that the petition does not state a cause of action because it "did not sufficiently allege any facts sufficient to support the conclusion of inadequate supervision of" the driver. In other words, appellees' position is that appellant's petition contains mostly, if not entirely, conclusions and not facts. Appellees cite the line of cases holding that allegations based largely upon conclusions without state-ments of facts are demurrable. Appellant, on the other hand, relies upon cases stating that general allegations of negligence are sufficient against a general demurrer. Thus, the dilemma is the usual one facing most judges in ruling on demurrers to a petition; that is, does the petition contain allegations in language that contain facts or do the allegations in the language used amount to conclusions.

As all active members of the bar know, distinguishing between fact and conclusion is very difficult in many situations. We deem it wise at this point to restate the purpose of the petition and rules applicable in construing the same. The purpose of the petition, as any pleading, is to acquaint and give notice to the other party of what one's position is. In construing a petition, of course, it is read in a light most favorable to the pleader and all favorable inferences are drawn therefrom in favor of the pleader.

With these basic premises in mind we now turn to appellant's petition. The pertinent parts of appellant's petition clearly show that he was attempting to plead within the confines of the *Hazlett* case. For example, compare the court's fourth syllabus in *Hazlett* with appellant's allegations in the first paragraph of his petition.

The *Hazlett* syllabus read:

"Public officers are individually responsible for their own acts *in the abuse or transgression of their authority,* or for willful and wanton negligence in *the choice of their employees or in the superintendence of* such employees in *the discharge of their allotted duties."* (emphasis ours)

Appellant's Petition reads:

"That the said defendants . . . are guilty of negligence *in their abuse and transgression of their authority* in the proper and reasonable care of *their selection of their agent,* George Shipman, and *in their superintendency of the discharge of his duties."* (emphasis ours)

---

In *Hazlett,* in the body of the petition the plaintiff went on to allege that the defendants knew or could have known by the exercise of ordinary and reasonable care, the unsafe condition of the truck. In the present case, appellant similarly alleges appellees abused and transgressed their authority to exercise *proper and reasonable care* in their superintendency of the discharge of the driver's allotted duties, by di-

recting the driver to use a truck with defective tires, defective brakes and a truck on which appellees had provided no inspection as required by law.

Still further, in *Hazlett* the court distinguished *Consolidated School District No. 1, Tulsa County v. Wright*, 128 Okl. 193, 261 P. 953 (1927) where the court found nonliability because the members of a school board acted in *good faith* and without malice. The court found the allegations in the *Hazlett* petition, however, were sufficient to charge *a want of good faith* on the part of the commissioners *in the selection of their driver and in directing him to use the defective truck.*

In the present case, appellant alleged appellees were "guilty of negligence in that they *lacked good faith* in their selection and *continuing in their employ,* George Shipman, *and in their directing* said defendant *Shipman, to use the* said 1970 International *truck with defective tires."*

While in the present case, the petition does contain some conclusions, as all petitions of necessity do, we find it contains facts so similar to those alleged in *Hazlett,* that we must conclude appellant's petition is good as against a demurrer. The purpose of the petition has been served we think, and that is to acquaint appellees with what appellant's position is. There is little else appellant could allege to further acquaint and notify appellees that appellant is claiming liability due to appellees furnishing their driver a defective truck.

The judgment of the trial court is therefore affirmed as to the sustention of the demurrer of the Board of County Commissioners of Okmulgee County as a body politic, and reversed as to the commissioners' demurrers, and the cause is remanded to the trial court with direction to overrule those demurrers and proceed accordingly.

NEPTUNE, P. J., concurs.

BRIGHTMIRE, Judge (concurring in part and dissenting in part).

I concur with that part of the opinion partially reversing the lower court judgment, but dissent as to that part affirming. In my opinion the language of 47 O.S.1971 § 158.1 is broad enough to cover counties. It authorizes "all . . . state departments and agencies not otherwise specifically authorized by law . . . to carry insurance on vehicles, motorized machinery, or equipment owned and operated [by them] . . . ." The statute then provides, "An action for damages may be brought against such department or state agency . . . [and] the governmental immunity [defense] . . . shall be waived only to the extent of the amount of insurance purchased." The law goes on to prescribe the procedure to be followed in establishing liability where there is insurance in force.

Quite recently the Oklahoma Supreme Court repeated a long recognized fact "that counties . . . within this state are merely quasi municipal corporations serving as *agencies of the state* . . . . They are . . . auxiliaries of the state; and to the general statutes . . . they owe their creation, and the statutes confer upon them all the powers they possess, prescribe all the duties they owe, and impose all the liabilities to which they are *subject." Champlin Petroleum Co. v. Board of County Comm'rs,* Okl., 526 P.2d 1142 (1974). (emphasis added)

Section 158.1 establishes rather emphatically the public policy of this state. Since it is a desirable one the act should be liberally construed to effectuate it.

At this stage of the proceedings the record fails to disclose the county did not have its truck covered with liability insurance and therefore the case should proceed as though it was, with any eventual recovery circumscribed by the policy limits.